[No. G007024. Fourth Dist., Div. Three. June 30, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES FRANCIS LAFITTE, Defendant and Appellant.

**COUNSEL**

Ronald Y. Butler, Public Defender, Carl C. Holmes, Thomas Havlena and Carol E. Lavacot, Deputy Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Rudolf Corona, Jr., and Maxine P. Cutler, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SONENSHINE, J.—** May law enforcement officers justify a protective search of a traffic detainee's car when the sole basis for believing the suspect dangerous was the plain view observation of a legal weapon within that vehicle? Yes.

I

On March 14, 1988, at approximately 10:15 p.m., Orange County Sheriff's Deputies Kevin Bieker and David Koppin were on routine patrol

in Anaheim when they noticed Charles Frances Lafitte driving an older model Cadillac with an inoperable headlight. Lafitte complied with the officers' signal to stop by parking near a busy intersection.

Bieker asked Lafitte for his driver's license while Koppin stood outside the passenger door, illuminating the car with his flashlight. While Lafitte was explaining he did not have his license with him, Koppin interjected, "There's a knife in the car, get him out." Bieker escorted Lafitte to the curb, where he conducted a patdown search for weapons. Finding none, the deputy handcuffed Lafitte and ordered him to sit on the curb. Not surprisingly, Lafitte refused the officers' request to search the car.

Nevertheless, Bieker searched the vehicle "to obtain the knife and to search for possibly more weapons before allowing Mr. Lafitte back in the car to obtain the registration." Bieker found a four-inch double-edged knife in a sheath, resting on the open glove box door, with the handle extended over the edge toward the driver's seat. Bieker also found a gun clip containing six bullets under the driver's seat, and an unloaded handgun concealed in a trash bag hanging from the ashtray next to the steering wheel. After the weapon was found, two other police officers briefly stopped to observe the investigation.

Lafitte did not appear to be under the influence of alcohol or drugs, and cooperated fully during the investigation. The deputies observed no threatening gestures or movements. After the search, the deputies verified that Lafitte had a valid California driver's license. Lafitte's motion to suppress was denied and he pleaded guilty to being a felon in possession of a gun. This appeal followed.

## II

In the seminal case of *Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868], the United States Supreme Court held that police may conduct a patdown search of a suspect's outer clothing during a valid detention when the officer has reason to fear for his safety, that is, "the persons with whom he is dealing may be armed and presently dangerous." (*Id.,* at p. 30 [20 L.Ed.2d at p. 911].) Subsequent cases interpreted *Terry* as permitting an additional search for weapons in the area within a suspect's reach, but no further. (See, e.g., *United States* v. *Johnson* (8th Cir. 1980) 637 F.2d 532, 535.)

The scope of the *Terry* search was dramatically broadened, however, in *Michigan* v. *Long* (1983) 463 U.S. 1032 [77 L.Ed.2d 1201, 103 S.Ct. 3469]. There, two police officers, patrolling in a rural area after midnight, saw

Long's speeding car travel erratically, eventually swerving off into a shallow ditch. Long met the officers at the rear of his car, but failed to respond when asked for his driver's license. A similar request for vehicle registration went unanswered; Long appeared to be under the influence. Eventually he turned and walked toward the open door of his vehicle. The officers followed and observed a large hunting knife on the floorboard next to the driver's seat. Although the weapon was legal, the officers immediately prevented Long from entering the car and conducted a patdown search, which revealed no weapons. One officer guarded Long while his partner looked in the car for more weapons. The search revealed an open pouch of marijuana on the front seat, and more contraband in the trunk.

In upholding the search, the Supreme Court held: "[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." (463 U.S. at p. 1049 [77 L.Ed.2d at p. 1220].) In weighing the interest of the individual against the governmental intrusion, the court found a compelling need to protect police and others "from the possible presence of weapons in the area surrounding a suspect." (*Id.,* at pp. 1048-1049 [77 L.Ed.2d at p. 1220].)

Lafitte distinguishes *Long* by arguing that the officers based their suspicion of Long's dangerousness on factors not found in the present case: erratic driving, detention of a suspect late at night in a rural and presumably isolated setting, and unresponsive conduct by the detainee.[1] In contrast, Lafitte was stopped for a minor equipment violation in a populated area and was cooperative throughout the investigation. Because there were no other suspicious circumstances, Lafitte argues the police could not reasonably suspect he was dangerous solely for possession of a legal weapon—the knife.

Adopting Lafitte's argument would unduly constrict the applicability of *Long,* and we doubt the court intended its holding to be narrowly confined to the specific facts before it.[2] For instance, the discovery of a hunting knife

---

[1] Lafitte also claims Long made an "unpredictable movement" towards the weapon. The facts of *Long* do not bear this out.

[2] Indeed, the court found its holding a natural outgrowth of past decisions, including the "workable rule" of *New York* v. *Belton* (1981) 453 U.S. 454, 460 [69 L.Ed.2d 768, 774-775, 101 S.Ct. 2860], which broadened car searches made incident to an arrest of the occupant. (*Michigan* v. *Long, supra,* 463 U.S. at pp. 1048-1049 [77 L.Ed.2d at p. 1219].) Moreover, Justice Brennan's dissenting opinion did not interpret the court's decision as a narrow holding based on unique facts, and noted "the implications of the court's decision are frightening." (*Id.,* at p. 1062 [77 L.Ed.2d at p. 1228].)

in rural Michigan could hardly be characterized as unusual. And the suspected criminal activity was drunk driving, in contrast to the suspicion of an impending armed robbery found in *Terry*.[3] Nevertheless, the court seemed willing to allow more leeway in the officer's decision that a suspect is "armed and presently dangerous,"[4] even for minor offenses.

Lafitte's argument that the observation of a legal weapon is insufficient support for a *Terry* search raised by Long, but the court "expressly rejected the view that the validity of a *Terry* search depends on whether the weapon is possessed in accordance with state law." (463 U.S. at p. 1052, fn. 16 [77 L.Ed.2d at p. 1222].)[5] Lafitte emphasizes the search in *Long* occurred late at night in a rural area. These circumstances lend support to the reasonableness of the officers' protective search, but the absence of these factors here does not mean the deputies acted unreasonably. In *Long,* as here, the discovery of the weapon is the crucial fact which provides a reasonable basis for the officers' suspicion. Considering the nature of the weapon, a four-inch double-edged dagger, and the position in which it was found, we conclude the deputies reasonably suspected Lafitte harbored additional weapons in the car.

Finally, Lafitte contends the officers should have utilized other means to avoid any potential danger. He also argues the registration information could have been obtained through a quick radio call or a request for permission to retrieve it from the glove box.

■ The *Long* court rejected this very argument, stating there is no requirement "officers adopt alternative means to ensure their safety in order to avoid the intrusion involved in a *Terry* encounter [themselves]" because they must make a " 'quick decision as to how to protect himself and others from possible danger . . . .' " (463 U.S. at p. 1052 [77 L.Ed.2d at p. 1222].)

---

[3] As Justice Brennan noted: "A drunken driver is indeed dangerous while driving, but not while stopped on the roadside by the police. Even when an intoxicated person lawfully has in his car an object that could be used as a weapon, it requires imagination to conclude that he is presently dangerous." (463 U.S. at pp. 1061-1062 [77 L.Ed.2d at p. 1228].)

[4] Curiously, in several instances the court stated the *Terry* test required "an articulable and objectively reasonable belief that the suspect is *potentially* dangerous." (*Id.,* at p. 1051 [77 L.Ed.2d at p. 1221], italics added.) This suggests a lesser standard, for almost everyone could be described as "potentially" dangerous. But we do not believe the court would alter such an important rule by implication; therefore, we will continue to adhere to *Terry's* requirement that the officer have a reasonable belief the suspect be armed and "presently" dangerous.

[5] Just how far this rule extends is unclear. As Justice Brennan pointed out, a baseball bat or hammer can be a lethal weapon; does this mean a policeman could reasonably suspect a person is dangerous because these items are observed in his or her car?

Judgment affirmed.

Crosby, Acting P. J., and Wallin, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 12, 1989. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.