[No. H009669. Sixth Dist. Aug. 4, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
IGNACIO MIRANDA, Defendant and Appellant.

## COUNSEL

Paul McCarthy, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Mark S. Howell and Joan Killeen, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WUNDERLICH, J.—**

*Statement of the Case*

Defendant Ignacio Miranda appeals from a judgment entered after his motion to suppress evidence (Pen. Code, § 1538.5) was denied and he pleaded guilty to possession for sale and sale of phencyclidine (PCP). (Health & Saf. Code, §§ 11378.5, 11379.5.) He claims the trial court erred in

denying his motion to suppress evidence against him. He argues that the evidence was the product of an unlawful pretextual traffic stop. We disagree and affirm the judgment.

*Facts*

At approximately 9:20 p.m. on February 8, 1991, Officer Steve Becerra of the Gilroy Police Department was driving a marked police car on patrol near the Gilroy Apartments, when a car containing three people passed him going the other way. Becerra recognized Yvonne Lucero, the driver, and defendant, the front seat passenger, from previous arrests involving PCP. He recognized the other passenger Leticia Cuellar but did not know her name. Their car entered a parking lot, and Becerra decided to follow them. He made a U-turn and entered the lot. He passed Lucero's car and noticed that Cuellar had a blank stare.

Lucero parked her car, and Becerra moved on to an adjacent lot. From there, he watched Lucero and Cuellar get out of the car and walk away. Cuellar still had a blank look and walked slowly and deliberately and at times needed Lucero's help. Becerra thought Cuellar might be under the influence of something, perhaps PCP. Defendant also got out of the car but stayed near it.

After about two minutes, Lucero and Cuellar returned, and Cuellar reentered the backseat. Lucero went to the trunk, opened it, put her hands inside, and moved them around. One of her hands had been closed, and Becerra thought she had put something inside. During this time, defendant stood slightly behind her and kept looking around and out toward the driveway. After Lucero closed the trunk, she and defendant reentered the car and drove out of the parking lot.

Becerra followed Lucero out of the lot and down Murray Street. He had no idea how far or where he was going to follow them and had no plan at that time to stop them. However, about one block from the Gilroy Apartments, Lucero made a left turn without signalling, in violation of Vehicle Code section 22107.[1] Becerra activated his lights and made a stop.

Becerra asked Lucero for her driver's license. She told him it was suspended. Becerra brought her to his patrol car to get more information and

---

[1] Vehicle Code section 22107 provides, "No person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided in this chapter in the event any other vehicle may be affected by the movement." (See Veh. Code, §§ 22108 [requiring signal for last 100 feet before turn]; 22110 [requiring signals by hand/arm or signal light] and 22111 [prescribing manner of giving hand/arm signals].)

A violation of this section is an infraction. (Veh. Code, § 40000.1.)

begin writing a citation. He then returned to Lucero's car to check on Cuellar's condition and see whether there was a validly licensed driver who could drive Lucero's car.

Becerra again saw that Cuellar's movements were slow and deliberate. When asked her name, date of birth, and address, she was not able to complete a sentence. Becerra, who the parties later agreed had expertise concerning the symptoms of PCP use, concluded that Cuellar was under the influence of PCP. He also spoke to defendant, who appeared to be coherent.

Becerra returned to Lucero, talked with her about her license, and asked for her address and car registration information. When he told her he thought Cuellar was under the influence of PCP, Lucero became very concerned. She said she did not believe or know anything about that and told Becerra that she was already on probation for a PCP-related offense and would not have anything to do with PCP. Becerra asked who her probation officer was, and Lucero told him. He asked if she had a probation search clause, and she said she did. He then asked if he could search her car, and she consented.

Becerra had defendant and Cuellar get out of the car so he could search inside without having to lean over them and expose the items on his gun belt. At that point, a backup officer arrived. Becerra then searched the car, and in the trunk he found a blue binder. Inside it, he found a baggie containing several hand-rolled cigarettes which were later found to contain PCP. Defendant, Lucero, and Cuellar were then arrested.[2]

### Standard of Review

In reviewing the denial of a motion to suppress evidence, we view the record in the light most favorable to the trial court's ruling and defer to its findings of historical fact, whether express or implied, if they are supported by substantial evidence. We then decide for ourselves what legal principles are relevant, independently apply them to the historical facts, and determine as a matter of law whether there has been an unreasonable search and/or seizure. (*People* v. *Williams* (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221].)

### Discussion

Defendant concedes that Lucero's failure to signal her left turn provided a "nominal" basis for a traffic stop. He contends, however, that Becerra used the stop as a pretext to investigate his suspicion of criminal

---

[2]Both defendant and Lucero were charged with possession for sale and sale of PCP.

activity unrelated to the traffic violation. He argues that such a stop is unreasonable under the Fourth Amendment to the United States Constitution and that here the illegal stop vitiated Lucero's consent to search the car. Thus, he claims that the warrantless search of the trunk was illegal and the evidence found therein should have been suppressed.[3]

According to one court, "a pretextual arrest occurs when the police employ an arrest based on probable cause as a device to investigate or search for evidence of an unrelated offense for which probable cause is lacking. [Citations.] As such, the arrest serves as a means to circumvent the warrant requirement of the [F]ourth [A]mendment." (*U.S.* v. *Trigg* (7th Cir. 1989) 878 F.2d 1037, 1039.)

 ██ Although federal courts long ago decried this practice (see, e.g., *Henderson* v. *United States* (4th Cir. 1926) 12 F.2d 528, 531 [51 A.L.R. 420]; *United States* v. *Lefkowitz* (1932) 285 U.S. 452, 467 [76 L.Ed. 877, 883-884, 52 S.Ct. 420, 82 A.L.R. 775]), recent pronouncements by the United States Supreme Court have made analyzing a claim of pretextual arrest more complicated.[4]

On the one hand, the definition of a "pretextual arrest" noted above suggests that a police officer's subjective ulterior investigative motive can render an ostensibly valid search incident to an arrest unreasonable under the Fourth Amendment. (See *United States* v. *Smith* (9th Cir. 1986) 802 F.2d 1119, 1124 [claim of pretext is question of the "motivation or primary purpose" of the arresting officer].) On the other hand, the Supreme Court in *Maryland* v. *Macon* (1985) 472 U.S. 463 [86 L.Ed.2d 370, 105 S.Ct. 2778] stated, "Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of

---

[3]In addition to the issue of pretextual police conduct, on which the parties here focus exclusively, the facts of this case suggest two additional issues. One is whether defendant, a passenger in Lucero's car, has "standing" to challenge the search inside the trunk, that is, whether he personally had a reasonable expectation of privacy there. (See *Rakas* v. *Illinois* (1978) 439 U.S. 128, 148-149 [58 L.Ed.2d 387, 404-405, 99 S.Ct. 421].) The second is whether Officer Becerra was generally authorized to search Lucero and her property, including the trunk of her car, without probable cause, or even a reasonable suspicion of criminal conduct, pursuant to the search condition of her probation. (See *People* v. *Viers* (1991) 1 Cal.App.4th 990, 993-994 [2 Cal.Rptr.2d 667].) The record before us was not sufficiently developed below to resolve the case on either of these grounds. Moreover, since the parties have neither briefed nor argued these issues, we too focus solely on the issue of pretextual traffic stops.

[4]Questions regarding the suppression of evidence are controlled by federal constitutional law. (*In re Lance W.* (1985) 37 Cal.3d 873, 896 [210 Cal.Rptr. 631, 694 P.2d 744].) Thus, our discussion is based primarily on federal case law concerning pretextual arrests.

mind at the time the challenged action was taken." (*Id.* at pp. 470-471 [86 L.Ed.2d at pp. 377-378]; see also *Horton* v. *California* (1990) 496 U.S. 128 [110 L.Ed.2d 112, 123-125, 110 S.Ct. 2301, 2308-2309]; *United States* v. *Villamonte-Marquez* (1983) 462 U.S. 579, 584, fn. 3 [77 L.Ed.2d 22, 27-28, 103 S.Ct. 2573]; *Scott* v. *United States* (1978) 436 U.S. 128, 138 [56 L.Ed.2d 168, 178, 98 S.Ct. 1717]; see also *People* v. *Hill* (1974) 12 Cal.3d 731 [117 Cal.Rptr. 393, 528 P.2d 1] [overruled on other grounds in *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896, fn. 5 (135 Cal.Rptr. 786, 558 P.2d 872)].)[5]

The effort to harmonize the concept of pretextual arrests with the Supreme Court's pronouncements has precipitated a conflict in case law and robust academic debate concerning how to analyze a claim of pretextual arrest, especially when based on a traffic stop. (See *Cummins* v. *United States* (1991) __ U.S. __ [116 L.Ed.2d 448, 449, 112 S.Ct. 428, 429 (dis. opn. of White, J. [certiorari should be granted to resolve conflict among circuits]; see, e.g., *U.S.* v. *Causey, supra,* 834 F.2d 1179 (maj., dis., and conc. opns.); compare *U.S.* v. *Trigg, supra,* 878 F.2d 1037; *U.S.* v. *Guzman* (10th Cir. 1988) 864 F.2d 1512; *United States* v. *Smith, supra,* 802 F.2d 1119; see also discussion and cases and authorities cited in 1 LaFave, Search & Seizure (2d ed. 1987) [LaFave] § 1.4(e), pp. 90-97, and Supp. (1993) p. 17, fn. 3 and pp. 19-21; 3 LaFave, *supra,* § 7.5(e), pp. 141-145, and Supp. (1993) pp. 35-36.)

Some courts have not considered the impact of the Supreme Court's statements and hold that the officer's *subjective* motivation or primary purpose in making the arrest is dispositive on the reasonableness of a subsequent search. (See, e.g., *United States* v. *Smith, supra,* 802 F.2d at p. 1124 [following *Williams* v. *United States* (9th Cir. 1969) 418 F.2d 159, 161]; *U.S.* v. *Reeves* (E.D.Wash. 1992) 798 F.Supp. 1459, 1463; *U.S.* v. *Hill* (D.N.D. 1987) 666 F.Supp. 174, 176; *United States* v. *Keller* (N.D.Ill. 1980) 499 F.Supp. 415, 416; *United States* v. *D'Alo* (D.R.I. 1979) 486 F.Supp. 945, 949; see also *U.S.* v. *Lillard* (9th Cir. 1991) 929 F.2d 500, 502; *United States* v. *Prim* (9th Cir. 1983) 698 F.2d 972, 975.)

Most federal courts, however, have rejected this view and conclude that the Supreme Court's statements require that the reasonableness of an arrest and search be solely determined by the *objective* circumstances. Two conflicting objective tests have emerged.

Under the majority test, the inquiry focuses on whether the officer was legally authorized to make an arrest and conduct a search. If, in the

---

[5]This and similar statements by the Supreme Court were not made in pretext cases and thus are not literally controlling here. (*U.S.* v. *Trigg, supra,* 878 F.2d at p. 1039; *U.S.* v. *Causey* (5th Cir. 1987) 834 F.2d 1179, 1184.)

abstract, the officer does no more than he or she is legally permitted to do, regardless of the subjective intent with which it was done, the arrest and search are objectively reasonable and constitutionally proper. (*U.S.* v. *Mitchell* (D.C. Cir. 1991) 951 F.2d 1291, 1295; *U.S.* v. *Cummins* (8th Cir. 1990) 920 F.2d 498, 500-501; *U.S.* v. *Trigg, supra*, 878 F.2d at p. 1041; *U.S.* v. *Causey, supra*, 834 F.2d at pp. 1084-1085; *U.S.* v. *Hawkins* (3d Cir. 1987) 811 F.2d 210, 212-215.)

Under the minority test, the arresting officer's conduct is measured against a "reasonable officer" standard. The pertinent question is not whether the officer *could* validly have made an arrest and conducted a search but whether under the same circumstances a reasonable officer *would* have done so in the absence of the invalid purpose. (*United States* v. *Smith* (11th Cir. 1986) 799 F.2d 704, 709; *U.S.* v. *Guzman, supra*, 864 F.2d at p. 1517; *U.S.* v. *Johnson* (5th Cir. 1987) 815 F.2d 309, 315.) Relevant objective circumstances might include, among other things, whether there has been an investigation of the defendant for other criminal activity prior to the arrest; whether the duties of the arresting officer would normally include making this particular kind of arrest (e.g., a Federal Bureau of Investigation officer making a traffic stop); whether the arresting officer is required to or normally would arrest the defendant for his or her conduct. (See *U.S.* v. *Guzman, supra*, 864 F.2d at p. 1518; *Amador-Gonzalez* v. *U.S.* (5th Cir. 1968) 391 F.2d 308, 314.)

Recently, in *People* v. *Uribe* (1993) 12 Cal.App.4th 1432 [16 Cal.Rptr.2d 127], the defendant claimed that a traffic stop was merely a pretext to search for drugs.[6] On appeal, the court noted the United States Supreme Court's statements discussed above (*ante*, pp. 923-924) and held that the subjective motivation of the arresting officer could not render an objectively reasonable traffic stop improper. (*Id.* at p. 1436.) The court recited the majority and minority tests but did not clearly adopt one over the other. Rather, it implicitly concluded that the stop was proper under either test, stating it was objectively reasonable for a traffic officer to stop the defendant because of the way he was driving. (*Id.* at p. 1438.)

We agree with *Uribe* and the overwhelming majority of courts that the subjective motivation of an arresting officer is irrelevant in determining the propriety of a traffic stop. Thus, we decline to follow those cases, cited above (*ante*, p. 924), in which the subjective motivation of the arresting officer was still considered dispositive.

---

[6]There, narcotics agents suspected that a truck driven by the defendant was transporting cocaine. They asked marked police units to pull him over for a traffic violation, hoping the stop would reveal evidence of narcotics violations. A patrol officer responded and stopped the defendant for making an illegal U-turn and an unsafe lane change. He then asked for and obtained the defendant's consent to search the truck and found drugs. (*People* v. *Uribe, supra*, 12 Cal.App.4th at pp. 1434-1435.)

Unlike the *Uribe* court, however, we formally adopt the majority test for determining the propriety of an officer's conduct during a traffic stop. Only this test properly maintains analytical focus on the objective reasonableness of an officer's conduct and can produce results that are predictable and consistent and therefore useful to the law enforcement and the public.

■ Furthermore, we believe the rules that now govern official conduct during traffic stops preclude the police from using a stop for a traffic violation to conduct a general, warrantless search for evidence of any criminal conduct. Indeed, it was the very lack of such limits on the scope of a search incident to an arrest that gave rise to most of the case law on pretextual arrests. (See *United States* v. *Lefkowitz, supra,* 285 U.S. 452; *United States* v. *Robinson* (D.C. Cir. 1972) 471 F.2d 1082, 1108 [153 App.D.C. 114] [revd. in *United States* v. *Robinson* (1973) 414 U.S. 218 (38 L.Ed.2d 427, 94 S.Ct. 467)]; *Amador-Gonzalez* v. *United States, supra,* 391 F.2d 308.)

■ In particular, a police officer can legally stop a motorist *only* if the facts and circumstances known to the officer support at least a reasonable suspicion that the driver has violated the Vehicle Code or some other law. (*People* v. *Superior Court* (1972) 7 Cal.3d 186, 200 [101 Cal.Rptr. 837, 496 P.2d 1205]; *People* v. *Griffith* (1971) 19 Cal.App.3d 948, 950-951 [97 Cal.Rptr. 367]; see *Terry* v. *Ohio* (1968) 392 U.S. 1, 16-19 [20 L.Ed.2d 889, 902-905, 88 S.Ct. 1868]; *People* v. *Franklin* (1985) 171 Cal.App.3d 627, 633 [217 Cal.Rptr. 529]; see also *People* v. *McGaughran* (1979) 25 Cal.3d 577, 582 [159 Cal.Rptr. 191, 601 P.2d 207]; *United States* v. *Fouche* (9th Cir. 1985) 776 F.2d 1398, 1403 [80 A.L.R.Fed. 605] [traffic infraction always a basis for a stop].)

In *People* v. *Superior Court, supra,* 7 Cal.3d 186, our Supreme Court explained the statutory scheme and procedures to be followed after a warrantless arrest for a Vehicle Code violation. Pertinent to our discussion here, the court observed that the scheme "in effect presumes that in the vast majority of cases the violator will not be taken into custody[.]" (*Id.* at p. 199.) ■ With certain exceptions, an officer "must prepare a written notice to appear (i.e., a citation or 'ticket'), and must release the violator 'forthwith' when the latter in turn gives his written promise that he will appear as directed [citations]." (*Ibid.*)

In *People* v. *McGaughran, supra,* 25 Cal.3d 577, the court held that when an officer makes such a traffic stop, the stop may last only so long as is reasonably necessary to perform the duties incurred by virtue of the stop. (*Id.* at pp. 584-587.)

Thus, an officer may order the driver out of the car (*Pennsylvania* v. *Mimms* (1977) 434 U.S. 106, 108 [54 L.Ed.2d 331, 335, 98 S.Ct. 330]), ask for and examine the motorist's driver's license and the car registration, discuss the violation and listen to any explanation, write a citation, and obtain the driver's promise to appear. (*People* v. *McGaughran, supra,* 25 Cal.3d at p. 584.)

If the officer reasonably believes the vehicle is in a dangerously unsafe condition, then he or she may submit it to "appropriate 'inspection' and 'tests[,]' " and if the vehicle is exposed to danger, the officer may require the driver to proceed to a safer location before continuing the process. (*People* v. *McGaughran, supra,* 25 Cal.3d at p. 584.)

If the driver is unable to produce a driver's license, registration, or satisfactory proof of identity, then the officer may, depending on the circumstances, reasonably expand the scope of the stop, making it incrementally more intrusive. (See *People* v. *Webster* (1991) 54 Cal.3d 411, 430-431 [285 Cal.Rptr. 31, 814 P.2d 1273]; *People* v. *Monroe* (1993) 12 Cal.App.4th 1174, 1182 [16 Cal.Rptr.2d 267]; *People* v. *Grant* (1990) 217 Cal.App.3d 1451, 1459 [266 Cal.Rptr. 587].)

■ However, since minor traffic offenses do not reasonably suggest the presence of weapons, an officer may not search the driver or those areas of a car where a weapon may be hidden and accessible unless the objective circumstances furnish reasonable grounds to believe the driver is armed and/or dangerous and may gain immediate control of a weapon. (*People* v. *Superior Court, supra,* 7 Cal.3d at p. 206; *Michigan* v. *Long* (1983) 463 U.S. 1032, 1049 [77 L.Ed.2d 1201, 1219-1220, 103 S.Ct. 3469]; *Terry* v. *Ohio, supra,* 392 U.S. at p. 30 [20 L.Ed.2d at p. 911]; *People* v. *Williams* (1992) 3 Cal.App.4th 1100, 1104 [5 Cal.Rptr.2d 59]; *People* v. *Lafitte* (1989) 211 Cal.App.3d 1429, 1431-1432 [259 Cal.Rptr. 915].)

■ We acknowledge that a traffic stop can provide an officer with an opportunity to observe what is in plain view. However, it is settled that a plain view observation is not itself an invasion of privacy, that is, a search. (See *Horton* v. *California, supra,* 496 U.S. at pp. 133-134 [110 L.Ed.2d at pp. 120-121, 110 S.Ct. at p. 2306].) And although the officer may not make an unlawful detention or arrest to gain plain view, a traffic stop for a vehicle code violation is not, standing alone, an unlawful arrest. In this regard, we agree with the analysis of Judge Wisdom in *Amador-Gonzalez* v. *United States, supra,* 391 F.2d 308, that "[t]here is a similarity between the effect of a 'pretextual arrest' and the effect of an unlawful arrest, but the two cannot be equated. Proof that a traffic arrest was only a pretext to search for

evidence of another offense is significant legally only because it bears on the reasonableness of the search." (*Id.* at p. 315.)

In sum, the rules and procedures outlined above demand that every action taken by an officer in the course of making a traffic stop be objectively reasonable and justified by the specific facts and circumstances confronting the officer.

These rules effectively prevent the use of routine traffic stops for vehicle code violations solely as a opportunity to search drivers, passengers, and/or vehicles without a warrant for purposes unrelated to traffic violation.

We conclude, therefore, that if, in the course of a traffic stop, the police do no more than they are legally authorized to do, a defendant's claim that the stop was nevertheless a pretext to conduct an otherwise unjustifiable search must fail.

Those who urge adoption of the "reasonable officer" test—would a reasonable officer have made the arrest in the absence of an invalid purpose—submit that this test allows courts to determine whether an officer's decision to effect a traffic stop was arbitrary and therefore unreasonable under the Fourth Amendment.[7]

We, however, find this test to be problematic.

In essence, the "reasonable officer" test asks courts to determine whether the arresting officer's conduct deviated from the usual practice of a "reasonable officer." To do this in a given case, the court must inquire into how police normally treat the particular Vehicle Code violation on which the stop was based. This "usual practice" is then elevated to a standard of procedure which the "reasonable officer" would have followed. (See, e.g., *U.S.* v. *Valdez* (11th Cir. 1991) 931 F.2d 1448.) However, such a case-by-case, police-department-by-police-department approach fails to provide the consistency and predictability officers need to meaningfully understand their obligations under the Fourth Amendment.

For example, in *U.S.* v. *Bates* (11th Cir. 1988) 840 F.2d 858, the court concluded that because the officer testified that he always stops cars for following too closely, the stop of the defendant's car was lawful despite the secondary suspicion of narcotics activity. On the other hand, in *State* v.

---

[7](See *U.S.* v. *Guzman, supra,* 864 F.2d at p. 1516, and authorities cited therein; *United States* v. *Smith, supra,* 799 F.2d at p. 711; *U.S.* v. *Causey, supra,* 834 F.2d at p. 1189 (dis. opn. by Rubin, J.); 1 LaFave, Search & Seizure, *supra,* § 1.4(e), p. 95.)

*Arroyo* (Utah.Ct.App. 1989) 770 P.2d 153 (revd. on other grounds in *State* v. *Arroyo* (Utah 1990) 796 P.2d 684), the court concluded that because the arresting officer was off duty, heading in the opposite direction, and rarely made stops for following too closely, a reasonable officer would not have stopped the defendant for this offense absent some unspecific suspicion. (See also, e.g., *United States* v. *Smith, supra,* 799 F.2d at p. 711, fn. 10 [although traffic stop for weaving was a pretext, under *other* circumstances the same weaving might be grounds for a stop].)

We do not believe the reasonableness of a traffic stop for an observed traffic violation should depend on the jurisdiction in which it occurs. Nor do we think that what the arresting officer does, or even the majority of officers in a department do, necessarily establishes a valid standard of what a reasonable officer would do under the same circumstances.

The usual-practices-of-the-police analysis, which is aimed at preventing the arbitrary exercise of the arrest power, has itself been criticized by one court for not really responding to the problem identified in pretext cases. (*U.S.* v. *Trigg, supra,* 878 F.2d at p. 1041.) For example, "an arrest made for a improper reason will be valid so long as the decision to arrest for a particular offense is not a departure from the norm while an arrest made for proper reasons will be invalid if the decision to arrest for the particular offense is a departure from the norm." (*Ibid.*) Consequently, this analysis has been rejected as an inappropriate, unwarranted, and far reaching check on the discretion of individual police officers to effect custodial arrests. (*Ibid.*)

We next note that, in essence, the "reasonable officer" test tries to divine what a reasonable officer's subjective motivation would be under similar circumstances. However, a significant factor in this determination is the arresting officer's invalid purpose, i.e., his or her subjective investigative motivation. Thus, although the "reasonable officer" test purports to be objective, the analysis is not so different from a purely subjective approach to the question of whether police conduct was unreasonable under the Fourth Amendment. For this reason, the test has been rejected as inconsistent with the United States Supreme Court's direction to analyze police conduct without regard to the individual officer's subjective motivation. (*U.S.* v. *Cummins, supra,* 920 F.2d at p. 501.)

Finally, we agree with the observation that this test places police "under the apprehension that their actions—which often require the exercise of great discretion—would be subject to misinterpretation months later in the anti-septic atmosphere of the courtroom." (*U.S.* v. *Trigg, supra,* 878 F.2d at p. 1042 (conc. opn. by Ripple, J.).)

Turning to the facts here, it is undisputed that Officer Becerra observed Lucero commit a moving traffic violation. Thereafter his conduct remained reasonably related to the duties incident to the stop, especially when Lucero informed him that her driver's license was suspended. Defendant does not claim otherwise.

In particular, it was reasonable for Becerra to speak with the passengers to determine if they could assume responsibility for driving Lucero's car. In the course of doing so, Becerra confirmed his suspicion that Cuellar was under the influence of PCP. He then returned to Lucero. In the course of obtaining pertinent information from Lucero, Becerra informed her about Cuellar's condition. Only then did Lucero volunteer information about a previous PCP-related offense, her probationary status, and search condition. This information, coupled with Lucero's denial of knowledge about Cuellar's condition and her conduct in the parking lot, reasonably justified Becerra's request for consent to search the car.

In all, Becerra was legally authorized to make a stop for a traffic violation, his conduct thereafter remained reasonable and proper under the circumstances, and the search was effected pursuant to Lucero's consent.

Defendant notes that Officer Becerra did not testify that Lucero's unsignalled left turn was actually unsafe or that there was any other traffic around. That Lucero might not have been driving in an obviously dangerous manner is irrelevant. Under Vehicle Code section 22107, the failure to properly signal where another "may be affected by the movement" is prima facie unsafe, for it creates the possible danger the statute was designed to prevent. Moreover, defendant is mistaken that there was no other traffic around. Officer Becerra was behind Lucero, and the primary benefit of the signal requirement is for the vehicles to the rear of the signalling vehicle. (*Stephens* v. *Hatfield* (1963) 214 Cal.App.2d 140, 144 [29 Cal.Rptr. 436].)

■ Citing *People* v. *Marquez* (1992) 1 Cal.4th 553 [3 Cal.Rptr.2d 710, 822 P.2d 418] and *People* v. *Haven* (1963) 59 Cal.2d 713 [31 Cal.Rptr. 47, 381 P.2d 927], defendant claims that our Supreme Court has recognized the illegality of pretextual traffic stops. Thus, he suggests that we, as a lower appellate court, are without power to adopt the majority test, which, he argues, effectively abolishes claims of pretextual traffic stops. (See *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].) We disagree.

Although the court in *People* v. *Haven, supra,* 59 Cal.2d 713, 719, quoted older federal cases for the proposition that " 'an arrest may not be used as a

pretext to search for evidence'[,]" that case involved the *delay* of an arrest so that the search incident thereto would encompass a location different from where the defendant was located when probable cause to arrest allegedly arose.

The federal cases cited in *Haven* involved either a general exploratory search incident to an arrest or an arrest made after consent to search had been refused. Moreover, *Haven* and the federal cases predate both the development of rules governing the scope of traffic stops and the United States Supreme Court's more recent statements concerning how to analyze Fourth Amendment violations. Consequently, we do not believe that under the doctrine of stare decisis, the court's general comments in *Haven* preclude us from adopting the majority test.

In *People* v. *Marquez, supra,* 1 Cal.4th 553, the California Supreme Court in dictum observed that it was not "faced with a situation in which the traffic stop is used as a pretext for investigation of other crimes for which there were not grounds to stop." (*Id.* at p. 578.) We do not consider this dictum a bar to our holding. We note, moreover, that the court cited *Cummins* v. *United States, supra,* __ U.S. __ [116 L.Ed.2d 448, 449, 112 S.Ct. 428, 429] and thus implicitly recognized the conflict among federal courts concerning the proper analysis of pretext claims and that the law in this area is unsettled.

Defendant also relies on *People* v. *Franklin, supra,* 171 Cal.App.3d 627, where the court stated that a traffic stop "may not be used solely for the purpose of discovering evidence of another charge (i.e., to effect a so-called pretext search)." (*Id.* at p. 633.) There, however, the court found the rule inapplicable because after the stop but *before* the search, officers observed in plain view evidence of a recent robbery that *independently* established probable cause to search the car. (*Id.* at p. 631.)

The result in *Franklin* is sound and consistent with our analysis in this case. However, to the extent *Franklin* implies that an arresting officer's ulterior investigative purpose can render a stop for a violation of the Vehicle Code unreasonable under the Fourth Amendment, we respectfully disagree.

Nevertheless, even under *Franklin*, defendant's claim of pretext here must fail. There, the evidence observed after the traffic stop independently justified an immediate warrantless search, even if the stop was initially made to investigate unrelated criminal conduct. Similarly, here the circumstances confronting Officer Becerra after the stop warranted his request for consent

to search. Lucero's consent, in turn, independently justified the search of her car.[8]

### Conclusion and Disposition

In light of our discussion, we conclude that the stop and search of Lucero's car were reasonable and proper. Thus, the trial court did not err in denying defendant's motion to suppress evidence found in the trunk.

The judgment is affirmed.

Cottle, P. J., and Bamattre-Manoukian, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 28, 1993. Lucas, C. J., and Mosk, J., were of the opinion that the petition should be granted.

---

[8]Defendant also cites *People* v. *Aguilar* (1991) 228 Cal.App.3d 1049 [279 Cal.Rptr. 246]. However, that case involved the impoundment and inventory search of a car for which there was no objectively reasonable basis. Thus, *Aguilar* is distinguishable.