Filed 7/5/24  P. v. Ipina CA1/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>SERGIO IPINA,<br><br>      Defendant and Appellant. | A167706<br><br>(San Mateo County<br>Super. Ct. No. 22-SF-002650-A) |

After appellant Sergio Ipina was stopped for speeding, a subsequent pat-down search revealed he was carrying a loaded firearm concealed in his waistband.  Ipina was charged with weapons-related offenses, and after moving unsuccessfully to suppress evidence, he pleaded no contest to a felony count of carrying a loaded firearm in a public place (Pen. Code, § 25850).[1]  On appeal, Ipina claims that the pat-down search violated the Fourth Amendment because no substantial evidence supports a reasonable suspicion he was armed and dangerous.  We disagree and affirm.

---

[1] All statutory references are to the Penal Code.

1

# I.
## FACTUAL AND PROCEDURAL
## BACKGROUND

On the night of February 27, 2022, an Atherton police officer pulled over Ipina for driving 55 miles per hour in a 35-mile-per-hour zone on El Camino Real. The area was dark and not well-lit.

The officer approached the car and asked for Ipina's driver's license and proof of insurance. Ipina told the officer that his driver's license had been stolen and provided a California identification card instead, along with insurance documentation. The officer proceeded to ask Ipina if he had smoked marijuana, to which Ipina responded that he had smoked "[e]arlier in the day." Despite conducting two separate tests, the officer did not find "any" signs of impairment.

The officer returned to his patrol car to write a traffic citation for speeding, which he left on the hood of his car. Upon his return, he shone a flashlight in Ipina's car, which revealed on the front passenger seat a closed, black cardboard box with an image of a firearm. The box was within Ipina's reach. The officer asked if the box contained a real firearm, which Ipina denied, explaining that it was an airsoft gun. The officer asked if there were any firearms or other weapons in the vehicle, which Ipina also denied. The officer requested permission to search the car, but Ipina declined.

The officer then asked Ipina to step out of his car to sign the citation, which was on the hood of the officer's patrol car, citing safety concerns due to the position of their vehicles and the flow of oncoming traffic. Specifically, the officer testified that he wanted to prevent his vehicle or partner from being hit by the "numerous" passing cars. Ipina complied and got out of his car. The officer observed Ipina wearing a "white baggy hoodie" that obscured his waistband and pockets. The officer testified that he found Ipina's clothing

2

concerning, as it concealed an area of the body where one "could easily hide" contraband, including narcotics and weapons. The officer had Ipina put his hands on top of his car before conducting a pat-down search of his "front waist area." Immediately, the officer felt a "hard object," which he identified as the "grip of a firearm." According to the officer, Ipina became "aggressive," prompting the officer's partner to intervene and assist in handcuffing Ipina. Afterward, the officer lifted up Ipina's shirt, revealing a handgun tucked in a fabric holster at his waist. The officer retrieved the firearm and placed it on the hood of the car.

Ipina was charged by felony information with carrying a loaded firearm in a public place (§ 25850, subd. (c)(6)—count 1) and carrying a concealed loaded weapon (§ 25400, subd. (c)(6)—count 2). He filed a motion to suppress evidence obtained from the traffic stop. After an evidentiary hearing, the trial court denied the motion, finding that under the totality of the circumstances, the officer conducted a lawful pat-down search. The trial court pointed to Ipina's earlier consumption of marijuana, the presence of a firearm box on the front passenger seat, and the fact that the stop occurred at night and in a poorly lit location with considerable traffic flow.

Ipina thereafter pleaded no contest to carrying a loaded firearm in a public place, and the other count was dismissed. The trial court sentenced Ipina to two years of supervised probation.

II.
DISCUSSION

A. *Applicable Legal Standards*

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. (U.S. Const., 4th Amend.) In *Terry v. Ohio* (1968) 392 U.S. 1, 27 (*Terry*), the United States Supreme Court interpreted the scope of the right and held that a police officer may perform a

3

limited search of a person's outer clothing for weapons, i.e., a pat-down search, if the officer has a reasonable suspicion that the person is "armed and dangerous." A search is reasonable under the Fourth Amendment when the "officer can point to specific and articulable facts that, considered in light of the totality of the circumstances," give rise to a reasonable suspicion that the officer's safety or that of others is in danger. (*People v. Souza* (1994) 9 Cal.4th 224, 231; see also *Terry*, *supra*, 392 U.S. at p. 27.) Given the risk associated with traffic stops, "[t]he judiciary should not lightly second-guess a police officer's decision to perform a patdown search for officer safety." (*People v. Dickey* (1994) 21 Cal.App.4th 952, 957.)

When reviewing a ruling on a motion to suppress, we defer to the trial court's express or implied factual findings, where they are supported by substantial evidence. (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) "In determining whether, on the facts so found, the search was reasonable under the Fourth Amendment, we exercise our independent judgment." (*Ibid.*)

### A. The Officer's Pat-down Search of Ipina Was Lawful Under the Fourth Amendment

Ipina argues that the officer's pat-down search violated the Fourth Amendment. We are not persuaded.

It is undisputed that the officer's initial stop of Ipina was lawful, and Ipina does not directly contest the legality of the officer's request for him to get out of his car to sign the speeding citation. Instead, he argues that there was insufficient evidence to support a reasonable suspicion that he was armed and dangerous. The Attorney General responds that various specific, articulable facts—such as the gun box and Ipina's baggy clothing—furnished the officer with such a reasonable suspicion, therefore justifying the search. The Attorney General also stresses that Ipina fails to consider the totality of

4

the circumstances and instead focuses on each factor in isolation. (See *United States v. Arvizu* (2002) 534 U.S. 266, 274 [*Terry* prohibits a "divide-and-conquer" analysis].) The Attorney General has the stronger argument.

First, the officer's decision to perform the pat-down search was supported by the officer's observation of the closed box with the firearm image that was located on the front passenger seat. Although the officer could not see an actual weapon since the box was closed, the firearm image on the box and Ipina's proximity to it were some indications that Ipina could be armed and dangerous. (See *People v. Lafitte* (1989) 211 Cal.App.3d 1429, 1430–1431 [holding that an officer's observation of a legal weapon located in the open glove box of the defendant's car constituted a reasonable basis for a protective search].)

Second, the officer's decision to perform the pat-down search was supported by the Ipina's baggy clothing. As the record reflects, the officer found the clothing "concerning" because it concealed an area commonly used to hide contraband, including weapons. We are unpersuaded by Ipina's reliance on *People v. Collier* (2008) 166 Cal.App.4th 1374 (*Collier*) and *Ybarra v. Illinois* (1979) 444 U.S. 85 (*Ybarra*), as both cases merely affirm that baggy clothing alone does not justify a pat-down search. In *Collier*, a pat-down search was upheld because the defendant's baggy clothing was coupled with other suspicious circumstances, including his "size . . . and the knowledge that [he] . . . may have been smoking marijuana," an illegal drug

5

at the time.[2]  (*Collier, supra*, 166 Cal.App.4th at p. 1378.)  Conversely, in *Ybarra*, the Supreme Court ruled a pat-down search unlawful when the only specific evidence the detaining officer could point to was the appellant's "3/4–length lumber jacket."  (*Ybarra, supra*, 444 U.S. at p. 93.)  *Ybarra* is unhelpful to Ipina because his baggy clothing was not the only specific evidence that the officer pointed to in explaining why he decided to perform the pat-down search.

Finally, we agree with the trial court that the pat-down search was further justified by the timing and location of the stop, which occurred at night and in a poorly lit area with significant traffic.  (See *People v. Souza, supra*, 9 Cal.4th at pp. 240–241 [holding that the time of night and location are valid considerations in determining the reasonableness of a search].)  These factors heightened the officer's safety concerns, as indicated by his testimony regarding the risk that oncoming traffic posed to his vehicle and partner.  They also justified the officer asking Ipina to exit his vehicle to sign the citation left on the hood of the officer's patrol car.  As Ipina got out of his car, his baggy clothes were revealed, further reinforcing the need for a pat-down search.  In attempting to minimize these factors' relevance, Ipina again focuses on them in isolation, citing *People v. Bower* (1979) 24 Cal.3d 638, 649, where an officer unlawfully searched the defendant solely because he was a White man walking with Black people in a " 'high' crime" area at night.  Ipina's reliance on *Bower* is misplaced, however, because in that case, unlike

---

[2]  In his opening brief, Ipina highlights that the passage of Proposition 64 in 2016 undermines *Collier*'s reliance on marijuana consumption as a relevant factor.  Had this been the only factor the trial court relied on, we might be more sympathetic to this argument.  But given the other factors, we need not consider Ipina's drug use to conclude that the totality of the circumstances supported the pat-down search.

this one, there were no specific facts suggesting that the defendant might be armed and dangerous.  (*Ibid.*)

Substantial evidence supports the conclusion that, under the totality of the circumstances, the officer conducted a lawful pat-down search of Ipina. The presence of a box with a firearm logo on it, combined with Ipina's baggy clothing and the timing and location of the stop, furnished the officer with a reasonable suspicion that Ipina may have been armed and dangerous. Accordingly, the trial court properly denied Ipina's motion to suppress.

### III.

### DISPOSITION

The order granting probation is affirmed.

_____

Humes, P.J.



WE CONCUR:



_____

Langhorne Wilson, J.



_____

Siggins, J.*





*Retired Associate Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*People v. Ipina*  A167706

8