Trynun PATTERSON, Petitioner,

v.

David L. RUNNELS, Warden Respondent.

No. CV 03–5465–RGK(CT).

United States District Court, C.D. California.

Oct. 6, 2003.

Michael Ellis Gaston, Michael E Gaston Law Offices, Long Beach, CA, for Trynun Patterson, petitioner.

Marc Aaron Kohm, CAAG—Office of Attorney, General of California, Los Angeles, CA, for Ernest Roe, California Department of Corrections, respondent.

## ORDER ACCEPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY AND MOTION TO STAY

KLAUSNER, District Judge.

Pursuant to 28 U.S.C. section 636, the court has reviewed the entire file de novo, including the magistrate judge's report and recommendation and petitioner's objections.

In his objections, petitioner, who has been represented by counsel in this case and in case number CV 03–3273, asserts that he still should have the opportunity to object to the magistrate judge's July 16, 2003 report and recommendation, which concluded that claims one and four were unexhausted. However, petitioner already had this opportunity. On July 24, 2003, petitioner filed a response to the July 16, 2003 report and recommendation in case number CV 03–3273. Significantly, in this response petitioner conceded that claims one and four were unexhausted. Petitioner requested that "the petition not be dismissed[,]" and that "the three exhausted claims and the petition itself be held in abeyance until the unexhausted claims can be filed and heard in the California [c]ourts." Petitioner stated that "either the two unexhausted claims will be exhausted in the state court, or they will be procedurally barred."

Petitioner now asserts that claims one and four were exhausted. His objection is

untimely as case number CV 03–3273 is closed, and for the reasons set forth in the magistrate judge's July 16, 2003 report and recommendation, the court disagrees.

Petitioner also objects to the magistrate judge's denial of his request to hold his second petition in abeyance while he exhausted claims one and four in the California Supreme Court. For the reasons set forth in the magistrate judge's September 10, 2003 report and recommendation in this case, which incorporates the magistrate judge's August 28, 2003 order denying petitioner's request to stay and abey his second petition, the court denies petitioner's motion to stay and abey.

Petitioner states that he has no objection to the magistrate judge's ruling that the court below erred in imposing concurrent sentences for robbery and conspiracy to commit robbery. However, the magistrate judge did *not* make any such ruling.

The court agrees with the magistrate judge's recommendation.

IT IS ORDERED:

1. The report and recommendation is accepted.

2. Petitioner's motion to stay and abey is denied.

3. Judgment shall be entered consistent with this order.

4. The clerk shall serve this order and the judgment on all counsel or parties of record.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY AND MOTION TO STAY

TURCHIN, United States Magistrate Judge.

This report and recommendation is submitted to the Honorable R. Gary Klausner, United States District Judge, pursuant to the provisions of 28 U.S.C. section 636 and General Order 01–13 of the United States District Court for the Central District of California. For the reasons discussed below, it is recommended that the petition be DENIED AND DISMISSED WITH PREJUDICE.

### SUMMARY OF PROCEEDINGS

On May 9, 2003, petitioner, in state custody and represented by counsel, filed a federal petition for writ of habeas corpus ("first federal petition") in Case Number CV 03–3273–RGK (CT). On June 6, 2003, respondent filed a motion to dismiss ("motion to dismiss") that argued the petition should be dismissed because it contained two unexhausted grounds. The motion to dismiss described the process to request that a federal petition containing both exhausted and unexhausted grounds ("mixed petition") be stayed and abeyed ("the stay and abey procedure") pending exhaustion of petitioner's grounds in state court. *See Ford v. Hubbard*, 330 F.3d 1086 (9th Cir. 2003). On July 17, 2003, a report and recommendation was filed recommending dismissal without prejudice for failure to exhaust state court remedies. The July 17, 2003 report and recommendation also described the stay and abey procedure. On July 24, 2003, petitioner filed a response that argued the two grounds in fact were exhausted and requested that the petition be held in abeyance while petitioner presented the two unexhausted grounds in the California Supreme Court. On July 25, 2003, the court denied petitioner's request, advising petitioner it did not have discretion to stay petitioner's mixed petition. The court again advised petitioner about the stay and abey procedure and the court warned petitioner that, according to respondent, he had until ap-

proximately July 30, 2003 to timely file a fully exhausted federal petition for writ of habeas corpus under the applicable statute of limitations. *See* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1). On July 29, 2003, judgment was entered dismissing the mixed petition without prejudice.

That same day, July 29, 2003, petitioner, again in state custody and represented by counsel, filed a timely second federal petition for a writ of habeas corpus ("second federal petition"), which was assigned Case Number CV 03–5465–RGK (CT) [1]. The second federal petition contains petitioner's three exhausted grounds. Petitioner concurrently filed a motion to hold the second petition in abeyance while he exhausted his other two grounds in the California Supreme Court ("motion to stay"). On August 25, 2003, respondent filed a return ("return") and an opposition to the motion to stay. On August 28, 2003, the court denied petitioner's motion to stay. On September 9, 2003, petitioner filed a traverse ("traverse").

## BACKGROUND

On June 27, 2000, a jury convicted petitioner of two counts of robbery, conspiracy, and first degree murder in violation of California law. (Mot. to Dismiss, Ex. A.)

On November 30, 2000, petitioner filed an appeal in the California Court of Appeal, raising the following grounds:

1. The trial court erred in denying petitioner's motion to suppress evidence on the grounds that petitioner's arrest was unlawful;

2. The trial court erred in denying petitioner's in limine motion to exclude

his extrajudicial statements on the grounds that *Miranda* [2] warnings were required at their inception, the statement was involuntary and the post-*Miranda* statement was otherwise coerced and involuntary;

3. The trial court erred in instructing the jurors pursuant to CALJIC No. 17.41.1 that they were obligated to report to the trial court any "improper" thoughts expressed by any juror during deliberations; and,

4. The sentences on Counts 2 and 6 must be stayed pursuant to California Penal Code section 654.

(Mot. to Dismiss, Ex. B at 27–28.) On September 25, 2001, the court of appeal affirmed the judgment and corrected petitioner's sentence in a partially published opinion. (Mot. to Dismiss, Ex. C.)

On October 29, 2001, petitioner filed a petition for review in the California Supreme Court, raising the following grounds:

1. Petitioner was arrested illegally and his subsequent confession should be suppressed; and,

2. The jurors were unconstitutionally instructed with CALJIC No. 17.41.1.

(Mot. to Dismiss, Ex. D at 105.) On December 19, 2001, the California Supreme Court granted the petition for review and noted that "[f]urther action on the matter is deferred pending consideration and disposition of a related issue in *People v. McKay* . . . . " (Mot. to Dismiss, Ex. E.) After the California Supreme Court's decision in *People v. McKay,* 27 Cal.4th 601, 117 Cal.Rptr.2d 236, 41 P.3d 59 (March 4, 2002), on May 1, 2002, the California Su-

---

**1.** Petitioner labeled this document "amended petition." However, Case Number CV 03–3273 was closed. The second federal petition was timely and, therefore, it was assigned a new case number.

**2.** *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

preme Court issued another order regarding petitioner's petition for review that dismissed the petition and remanded the "cause" to the court of appeal. (Mot. to Dismiss, Ex. F.) On May 8, 2002, the court of appeal closed the case and issued the remittitur. (Respondent's Response to Court's June 10, 2003 Order, Ex. A.)

Petitioner did not seek collateral review in the California courts.

The first and second federal petitions followed.

## CONTENTIONS

In his first federal petition, petitioner raised the following grounds:

1. Trial counsel was constitutionally ineffective for failing to argue that petitioner's statements were the product of improper police coercion;

2. Petitioner's arrest was unlawful;

3. Evidence that was the product of the unlawful arrest and unlawful search of petitioner's vehicle was introduced at trial and used to convict petitioner;

4. Petitioner's statements should have been suppressed because he was not advised of his constitutional rights prior to questioning and the statements were therefore obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and,

5. The trial court violated petitioner's federal constitutional rights when it instructed the jury pursuant to CALJIC No. 17.41.1.

(First Fed. Pet. at 5–6). Respondent contended that grounds one and four were unexhausted, and the court concurred. In his second federal petition, petitioner raises the following grounds:

1. The trial court erred in refusing to suppress evidence seized from petitioner's vehicle because the evidence was obtained as the result of an unlawful search and seizure in violation of petitioner's Fourth Amendment rights;

2. Petitioner was arrested without probable cause; and,

3. The trial court violated petitioner's federal constitutional rights when it instructed the jury pursuant to CALJIC No. 17.41.1.

(Second Fed. Pet. at 3.)

## FACTUAL BACKGROUND

The facts set forth in the California Court of Appeal's opinion are reasonably supported by the record, and that opinion is attached as exhibit 1 to this Report and Recommendation. (Ret., Ex. B.) Essentially, on May 3, 1999, petitioner and three other men entered a jewelry and music store in Long Beach, California; shot and killed co-owner Gary Kim; threatened an employee; and stole money and jewelry from the store. (RT 447–88; 513; 520.)[3] After being advised of and waiving his constitutional rights, petitioner told the police that he participated in the robbery. (RT 576–80.) Petitioner admitted that jewelry found in his home was stolen during the robbery. (RT 537–41; 583.)

## DISCUSSION

### Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the

---

**3.** "RT" refers to the reporter's transcript of the proceedings. "CT" refers to the clerk's transcript of the proceedings. Each reference will be followed by the applicable page number(s).

claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or, (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d) (as amended by the "Antiterrorism and Effective Death Penalty Act of 1996" ("AEDPA")); *see also Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (stating that "[S]ection 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court").

A state court decision is "contrary to" the Supreme Court's clearly established precedents if it "applies a rule that contradicts the governing law set forth" in the Supreme Court's cases or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams v. Taylor,* 529 U.S. at 405–06, 120 S.Ct. 1495. State court decisions that are not contrary to clearly established Supreme Court precedent warrant federal habeas corpus relief "only if they are not merely erroneous, but 'an *unreasonable* application' of clearly established federal law, or based on 'an *unreasonable* determination of the facts.'" *Early v. Packer,* 537 U.S. 3, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam) (finding state court decision does not even require awareness of United States Supreme Court cases, so long as neither the reasoning nor the result of the state court decision contradicts them); *see also Woodford v. Visciotti,* 537 U.S. 19, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam) (emphasizing difference between *unreasonable*

application of federal law and *incorrect* application).

A state court decision is an "unreasonable application of" the Supreme Court's precedent if the court "correctly identifies the governing legal rule but applies it unreasonably to the facts" of the case. *Penry v. Johnson,* 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001) (quoting *Williams v. Taylor,* 529 U.S. at 407–08, 120 S.Ct. 1495). On federal habeas review, even if constitutional error occurred in the state court, error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *see also O'Neal v. McAninch,* 513 U.S. 432, 435–36, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

■ "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *see also* 28 U.S.C. § 2254(a). The United States Supreme Court has held that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding the judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). On habeas review, when there is no reasoned state court decision to review, the court conducts an independent review of the record to determine whether the state court unreasonably applied controlling federal law. *See Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000).

1. *Opportunity to Litigate Fourth Amendment Claims* (Second Federal Petition, Grounds 1 and 2)

■ In ground one, petitioner argues that the trial court erred in refusing to

suppress evidence seized from petitioner's vehicle because the evidence was obtained during an unlawful search in violation of petitioner's Fourth Amendment rights. (Second Fed. Pet. at 3.) In ground two, petitioner contends he was arrested without probable cause. (Second Fed. Pet. at 3.) Neither claim is cognizable on habeas review.

The United States Supreme Court has held that "[w]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). "The relevant inquiry is whether petitioner had the opportunity to litigate his [Fourth Amendment] claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz–Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir.1996).

Here, petitioner not only had the opportunity to litigate his Fourth Amendment claims, he actually did so. Petitioner brought a motion to suppress evidence during trial, and it was denied. (CT 255–62; 308–09.) On direct appeal, petitioner raised his Fourth Amendment claims before the California Court of Appeal and the California Supreme Court, both of which denied relief. (Ret., Exs. B, C, and E.) Petitioner therefore had a full and fair opportunity to present his Fourth Amendment claims in the state courts, and habeas relief is not warranted. *See Villafuerte v. Stewart*, 111 F.3d 616 (9th Cir.1997).

Moreover, the court observes that the court of appeal concluded that the search of petitioner's vehicle and petitioner's arrest complied with the Fourth Amendment and U.S. Supreme Court law. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). (Ret., Ex. B

at 80, 83.) This court concurs under the applicable standard of review.

**2. Jury Instruction** (Second Federal Petition, Ground 3)

Petitioner claims that the trial court violated petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments because it instructed the jury with California Jury Instruction Criminal ("CALJIC") No. 17.41.1.

The record reflects that the trial court advised the jury that "[y]ou must accept and follow the law as I state it to you whether or not you agree with the law." (RT 641; CALJIC No. 1.00.) The trial court also read CALJIC No. 17.41.1 to the jury. (RT 675; CALJIC No. 17.41.1.) As read to the jury in this case, CALJIC No. 17.41.1 stated:

> The integrity of a trial requires that the jurors conduct themselves as required by these instructions. So if it should occur to some juror that some other juror just refuses to deliberate or expresses some intention just to disregard the law or decide the case based upon things like penalty or punishment or any improper basis, please, it is your obligation to let me know by some note. Anybody can send out a note.

(RT 675; CALJIC No. 17.41.1.) Trial counsel did not object to these instructions.

The trial court also instructed the jurors regarding their duty to decide the case based on their individual opinions:

> The people and the defendant are entitled to the individual opinion of each of you. You must consider the evidence for the purpose of reaching verdicts if you can do so. You must decide the case for yourself but you should do so only after discussing the evidence and the instructions with the other jurors. Do not hesitate to change an opinion if

you are persuaded or convinced it is wrong; however, don't decide any question in a particular way because a majority of the jurors, or any of them, favor that decision. Obviously, no decisions by chance.

(RT 674; CALJIC No. 17.40.) Additionally, the trial court instructed the jury, "[i]n your deliberations, don't discuss the subject of penalty or punishment. It must not in any way affect your verdict." (RT 675; CALJIC No. 17.42.) The trial court concluded its instruction of the jury by stating that "[i]n order to reach verdicts, all twelve jurors have to agree." (RT 676; CALJIC No. 17.50.) The jury is presumed to have followed the trial court's instructions. *Zafiro v. United States,* 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).

Petitioner also raised this ground in the California Court of Appeal and, noting that the issue currently was under review by the California Supreme Court, the court of appeal stated[4]:

> Appellant contends the instruction is unconstitutional because it deprives him of his right to a unanimous jury. He also contends it violates the Evidence Code provisions guaranteeing the inviolate privacy of a juror's mental processes by inviting jurors to single out unpopular or holdout voters for removal. Finally, he contends it intrudes on the jury's power (albeit not the right) of jury nullification. Appellant did not object to the instruction, thus waiving his contentions...
>
> Even if appellant's contentions are preserved on appeal, they are unavailing

because the instruction correctly states the law that the jurors are under a duty to follow the trial court's instructions ... We believe that CALJIC No. 17.41.1 is neutral in its language, and serves the interests of both the prosecution and the defense by preventing improper considerations from influencing the jury. We find no basis for ruling it improper.

(Ret., Ex. B at 87) (citations omitted).

■■■ To the extent petitioner claims a jury instruction was incorrect under state law, his claim is not cognizable on federal habeas review. *Estelle v. McGuire,* 502 U.S. 62, 68 n. 2, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). To merit relief, petitioner must show the instructional error so infected the entire trial that the resulting conviction violated due process. *Estelle v. McGuire,* 502 U.S. at 68 n. 2, 112 S.Ct. 475; *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). The allegedly erroneous instruction must be considered in the context of the trial record and the instructions as a whole. *Estelle v. McGuire,* 502 U.S. at 72, 112 S.Ct. 475; *Henderson v. Kibbe,* 431 U.S. at 156, 97 S.Ct. 1730; *Cupp v. Naughten,* 414 U.S. at 146–47, 94 S.Ct. 396.

■■■ "The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged." *Shannon v. United States,* 512 U.S. 573, 579, 114 S.Ct. 2419, 129 L.Ed.2d 459 (1994). The jury is not to consider the consequences of its verdict, and should be

---

**4.** After the court of appeal's opinion was filed, the California Supreme Court held in *People v. Engelman,* 28 Cal.4th 436, 121 Cal.Rptr.2d 862, 49 P.3d 209 (2002), that "merely because CALJIC No. 17.41.1 might induce a juror who believes there has been juror misconduct to reveal the content of deliberations unnecessarily (or to threaten to do so)," the giving of the instruction did not constitute a violation of the constitutional right to trial by jury or otherwise constitute error under state law. 28 Cal.4th at 444, 121 Cal.Rptr.2d 862, 49 P.3d 209. The court, however, did conclude that the "instruction should not be given in future criminal cases because it had the 'potential' to intrude on the deliberative process." *Id.*

instructed to reach its verdict without regard to what sentence might be imposed. *Id.* "Jury nullification" occurs when the jury acquits the defendant even though the government has proven its case beyond a reasonable doubt. *United States v. Powell*, 955 F.2d 1206, 1212–13 (9th Cir.1991). Defendants are not entitled to jury nullification instructions; "anarchy would result from instructing the jury that it may ignore the requirements of the law." *United States v. Powell*, 955 F.2d at 1213 (citation omitted). Although the jury has the power of nullification, the jury has no right to engage in nullification. *Standefer v. United States*, 447 U.S. 10, 22, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980).

 Based on review of the entire record, this court defers under the applicable standard of review to the state court's determination, and independently finds that the administration of CALJIC No. 17.41.1 did not so infect the trial that the resulting conviction violated petitioner's constitutional right to due process. Considered as a whole, the instructions administered to the jury accurately stated the law and advised the jurors that it was their duty to decide the case based on their individual opinions. Moreover, the record contains no indication that any problems arguably attributable to CALJIC No. 17.41.1—such as jury deadlock, conflict regarding holdout jurors, refusal to follow the law, or intrusion by the presiding judge into the deliberative process—occurred during deliberations. Rather, the record reflects that the jurors deliberated for approximately eight-and-a-half hours and then returned their verdict. (Ret., Ex. B at 86–88.) Habeas corpus relief is unwarranted on this ground.

### Stay and Abey Order

For the reasons set forth in the magistrate judge's August 28, 2003 order denying petitioner's motion to stay and abey the second federal petition, the magistrate judge recommends that the district judge also deny petitioner's motion to stay and abey the second federal petition. A copy of the August 28, 2003 order is attached as exhibit 2 to this Report and Recommendation.

### CONCLUSION

After independent review of the record and, where applicable, looking through the California Supreme Court's silent denial on the claims raised in this petition, this court finds that the California courts' adjudication of these claims did not involve an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, or an unreasonable application of clearly established federal law, as determined by the United States Supreme Court. As a result, habeas corpus relief is not warranted.

### RECOMMENDATION

In accordance with the foregoing, it is recommended that the court issue an order: (1) accepting this report and recommendation; and (2) directing that judgment be entered denying and dismissing the petition with prejudice.

September 10, 2003.

### NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrates and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of judgment of the District Court.

EXHIBIT

CERTIFIED FOR PARTIAL
PUBLICATION *

IN THE COURT OF APPEAL OF THE
STATE OF CALIFORNIA SECOND
APPELLATE DISTRICT DIVISION
FIVE

THE PEOPLE, Plaintiff and Respondent,

v.

TRYNUN PATTERSON, Defendant
and Appellant.

b143582

(Super. Ct. No. NA040726)

APPEAL from a judgment of the Superior Court of Los Angeles County.
Charles D. Sheldon, Judge. Modified and
affirmed.

Athena Shudde, under appointment by
the Court of Appeal, for Defendant and
Appellant.

Bill Lockyer, Attorney General, David
P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Senior Assistant Attorney General, Susan D. Martynec
and Rori M. Ridley, Deputy Attorneys
General, for Plaintiff and Respondent.

Appellant Trynun Patterson appeals the
judgment following his convictions for robbery and first degree murder. After review, we modify the sentence, and as modified, we affirm. In the published portion
of our opinion, we apply the recent decision in *Atwater v. City of Lago Vista*, 532
U.S. 318 [121 S.Ct. 1536], 149 L.Ed.2d 549
(2001), and hold that a custodial arrest for
a fine-only misdemeanor offense, even if it
violates California law, does not require

---

* Pursuant to California Rules of Court, rules
976(b) and 976.1, this opinion is certified for
publication with the exception of the Discussion, subsection A of section 1, and sections 2
through 4.

the suppression of evidence obtained as a
product of the arrest.

### PROCEDURAL AND FACTUAL BACKGROUND

In accord with the usual rules of appellate review, we state the facts in the light
most favorable to the judgment. (*People
v. Ochoa*, 6 Cal.4th 1199, 1206, 26 Cal.
Rptr.2d 23, 864 P.2d 103 (1993).) On May
3, 1999, appellant Trynun Patterson and
three others robbed a jewelry and music
store in Long Beach. During the robbery,
one of appellant's accomplices shot and
killed the store's owner, Gary Kim. Two
days later, police arrested appellant for
possession of less than one ounce of marijuana. Although not yet suspected of the
robberies and murder, he was interviewed
by homicide detectives to see if he knew
anything about the crimes. After talking
with the detectives for almost six hours, he
fully confessed.

Appellant was charged by information
with the robbery and murder of Gary Kim
(Pen.Code, §§ 187, subd. (a), 211) (counts 1
& 2), and the special circumstance of robbery-murder (Pen.Code, § 190.2, subd.
(a)(17)). He was also charged with robbing a store employee, Jenny Kim (Pen.
Code, § 211) (count 3), and with conspiracy to commit robbery (Pen.Code, §§ 182,
subd. (a)(1), 211) (count 6). A jury convicted him of the robbery and first degree
felony-murder of Gary Kim, second degree
robbery of Jenny Kim, and conspiracy to
commit robbery. The court sentenced him
to life without possibility of parole plus
four years for the murder of Gary Kim. It
also imposed two concurrent terms of seven years for the robberies of Gary Kim
and Jenny Kim. Finally, it imposed a concurrent three-year term for conspiracy to
commit robbery. This appeal followed.[1]

---

1. Appellant's accomplices were tried separately and are not parties to this appeal.

## DISCUSSION

### 1. *Motion to Suppress Physical Evidence and Confession*

Based on evidence from the crime scene, Long Beach police quickly determined that a man named Kenny Buckner was one of the robbers. Having identified Buckner, police planned to arrest him, but wanted the arrest to be inconspicuous so as not to alert his co-perpetrators. Accordingly, they placed him under surveillance.

Two days after the murder, detectives saw Buckner leaving a residence with appellant, who police had not yet identified as a suspect. Buckner and appellant entered a car, and appellant drove them away. After a few blocks, appellant stopped the car, and Buckner got out to talk to a pedestrian. Appellant sat in the car and rolled what appeared to be a marijuana cigarette. He smoked it while waiting for Buckner. When Buckner returned to the car, appellant drove on. The surveillance team then instructed uniformed officers to make a traffic stop of the vehicle.

Noticing appellant's car was missing a rear view mirror, the patrol officers pulled the vehicle over.[2] As the officers approached appellant's car, one smelled marijuana. He asked permission to search the car, to which appellant said "sure." The officer seized a partial marijuana cigarette in the ashtray and a small baggie containing less than an ounce of marijuana. The officers arrested appellant for possession of the marijuana and took him to the police station. There, he was interviewed by homicide detectives, and he eventually provided a detailed confession. In a later inventory search of the car, police found a gun in the trunk. They later determined it was not the one used in the murder.

**[The portion of this opinion that follows is deleted from publication.]**

### A. *Physical Evidence*

Appellant contends that the court erred in denying his motion to suppress evidence seized from his vehicle. However, we find that appellant consented to the search, making it lawful. (*Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)) [consent makes search lawful]; *People v. Memro*, 11 Cal.4th 786, 847, 12 Cal.4th 783D, 47 Cal.Rptr.2d 219, 905 P.2d 1305 (1995) [same].

Appellant, who does not challenge the voluntariness of his consent, contends he only agreed to police searching for drugs, not weapons, thus rendering their search of his trunk for the gun beyond the scope of his consent. (See *People v. Crenshaw* (1992) 9 Cal.App.4th 1403, 1408, 12 Cal. Rptr.2d 172 [search may not exceed scope of consent].) His claim fails because the court found appellant did not so limit his consent, a factual finding that binds us. (*Ibid.*) In any event, even if appellant had wanted to confine the scope of the search, his desire to restrain the police was ineffective because the smell of marijuana gave them probable cause to search his car. *People v. Coleman*, 229 Cal.App.3d 321, 326–327, 280 Cal.Rptr. 54 (1991); (*People v. Soberanes* (1979) 159 Cal.Rptr. 155, 97 Cal.App.3d Supp. 21, 27.)

(*Arkansas v. Sullivan*, 532 U.S. 769 [121 S.Ct. 1876, 149 L.Ed.2d 994] (2001); *Whren v. United States*, 517 U.S. 806, 812–813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *People v. Miranda*, 17 Cal.App.4th 917, 924, 21 Cal. Rptr.2d 785 (1993).)

---

**2.** Because the missing mirror permitted a traffic stop (*People v. Webster*, 54 Cal.3d 411, 430, 285 Cal.Rptr. 31, 814 P.2d 1273 (1991)), it is irrelevant whether that infraction was the officers' true subjective motivation for the stop or merely, as appellant asserts, a pretext.

[The portion of this opinion that follows is to be published.]

## B. *Confession*

Appellant moved to suppress his confession on the ground that it was the product of an illegal arrest. He maintained that the offense of possessing less than 28.5 grams of marijuana did not permit a custodial arrest, and that therefore the subsequent confession must be suppressed. The trial court denied the motion. We find the ruling correct.

Under California law, mere possession or transportation of less than 28.5 grams of marijuana other than concentrated cannabis is a misdemeanor offense punishable by a fine of not more than one hundred dollars. (Health & Saf.Code, §§ 11357, subd. (b) [possession], 11360, subd. (b) [transportation].) Moreover, as to each such offense, the applicable statute provides in identical terms: "In any case in which a person is arrested for a violation of this subdivision and does not demand to be taken before a magistrate, such person *shall be released by the arresting officer upon presentation of satisfactory evidence of identity and giving his written promise to appear in court,* as provided in Section 853.6 of the Penal Code, and shall not be subjected to booking." (Health & Saf. Code, §§ 11357, subd. (b), 11360, subd. (b), italics added; see *People v. Coleman, supra,* 229 Cal.App.3d at 326–327, 280 Cal. Rptr. 54.) In this case, appellant testified at the suppression hearing that he possessed five grams of marijuana. The People offered no contrary evidence.

For purposes of our discussion, therefore, we will simply assume that the police violated California law by making a full custodial arrest of appellant, and that no other ground for the arrest existed. Nonetheless, the assumption that the arrest violated California law is irrelevant in determining whether appellant's subsequent confession was admissible. That question turns not on the California statutes, but on the scope of Fourth Amendment protections. (*In re Lance W.,* 37 Cal.3d 873, 886–887, 210 Cal.Rptr. 631, 694 P.2d 744 (1985) [seized evidence not inadmissible except to the extent required by federal Constitution]; *People v. Donaldson,* 36 Cal.App.4th 532, 539, 42 Cal.Rptr.2d 314 (1995) [warrantless misdemeanor arrest in violation of Penal Code section 836, subdivision (a)(1) did not require suppression of evidence]; *People v. Trapane* (1991) 3 Cal. Rptr.2d 423, 1 Cal.App.4th Supp. 10, 12–14 [same].)

In *Atwater v. City of Lago Vista, supra,* 532 U.S. 318 [121 S.Ct. 1536], 149 L.Ed.2d 549 (2001) (*Atwater*), the United States Supreme Court profoundly limited Fourth Amendment restrictions on the seizure of persons suspected of having committed offenses punishable by only a fine. In that decision, a police officer arrested the plaintiff for violating a Texas statute that required a front seat vehicle passenger both to wear a seatbelt and secure small children riding in the front seat. Texas law classifies these violations as misdemeanors, punishable by only a fine. It also authorizes police officers to arrest persons who violate the statute. The plaintiff in *Atwater* filed a civil rights action, alleging that her arrest for a fine-only offense violated her Fourth Amendment right to be free from unreasonable seizure. The Supreme Court rejected the claim. "[W]e confirm today what our prior cases have intimated: the standard of probable cause 'applie[s] to all arrests, without the need to "balance" the interests and circumstances involved in particular situations.' [Citation.] If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."

(*Atwater, supra,* 532 U.S. at 354 [121 S.Ct. at 1557].)

The Court held that the plaintiff's arrest complied with Fourth Amendment standards. As the Court explained in part, the officer had probable cause to believe that the plaintiff had violated the statute in his presence. The officer "was accordingly authorized (not required, but authorized) to make a custodial arrest without balancing costs and benefits or determining whether or not [plaintiff's] arrest was in some sense necessary." (*Atwater, supra,* 532 U.S. at 354 [121 S.Ct. at 1557].)

After *Atwater,* the court decided *Arkansas v. Sullivan, supra,* 532 U.S. 769 [121 S.Ct. 1876] (*Sullivan*). In *Sullivan,* the trial court ruled that a police officer had improperly used the pretext of traffic offenses to stop and search the defendant's vehicle. The Alabama Supreme Court affirmed the trial court's suppression of evidence seized from the vehicle. The Alabama court reasoned that despite the decision in *Whren v. United States, supra,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (*Whren*), the police officer's improper subjective motivation was a legitimate basis to find a Fourth Amendment violation. The United States Supreme Court reversed, reaffirming the holding of *Whren* that a police officer's subjective motivation is generally irrelevant to a Fourth Amendment analysis. Of importance to the instant case is the Court's brief mention of *Atwater.* The Court cited *Atwater* with the comment, "[W]e note that the Arkansas Supreme Court never questioned [the police officer's] authority to arrest Sullivan for a fine-only traffic violation (speeding), and rightly so." (*Sullivan, supra,* 532 U.S. at 771 [121 S.Ct. at 1878].) Indeed, as the concurrence in *Sullivan* observed, *Atwater* "recognized no constitutional limitation on arrest for a fine-only misdemeanor of-

fense ...." (*Id.* at 1879 (conc. opn. of Ginsburg, J.) [121 S.Ct. at 1879].)

Thus, the holding of *Atwater* is simple enough—the arrest of a person for a minor offense punishable by only a fine does not violate the Fourth Amendment. The implications of this holding, however, are far more complex. These implications, drawn from companion Fourth Amendment principles, are summarized in the *Atwater* dissent of Justice O'Connor: "Under today's holding, when a police officer has probable cause to believe that a fine-only misdemeanor offense has occurred, that officer may stop the suspect, issue a citation, and let the person continue on her way. [Citation.] Or, if a traffic violation, the officer may stop the car, arrest the driver [citation], search the driver, see *United States v. Robinson* [414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)], search the entire compartment of the car including any purse or package inside, see *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 [(1981)], and impound the car and inventory all of its contents, see *Colorado v. Bertine,* 479 U.S. 367, 374, 107 S.Ct. 738, 93 L.Ed.2d 739 [(1987)]; *Florida v. Wells,* 495 U.S. 1, 4–5, 110 S.Ct. 1632, 109 L.Ed.2d 1 [(1990)]. Although the Fourth Amendment expressly requires that the latter course be a reasonable and proportional response to the circumstances of the offense, the majority gives officers unfettered discretion to choose that course without articulating a single reason why such action is appropriate." (*Atwater, supra,* 532 U.S. at 371, 121 S.Ct. 1536 (dis. opn. of O'Connor, J.) [121 S.Ct. at 1567].) Further, "[t]he arrestee may be detained for up to 48 hours without having a magistrate determine whether there in fact was probable cause for the arrest." (*Id.* at 363 [121 S.Ct. at 1563].)

In the instant case, at the very least the police had probable cause to believe that

appellant committed the fine-only misdemeanor offenses of possession and transportation of less than 28.5 grams of marijuana. Thus, under *Atwater* the Fourth Amendment did not prohibit making a custodial arrest and transporting appellant to the police station. Even if the arrest violated the relevant California statutory provisions, his subsequent confession could not be suppressed on that ground. Rather, since the arrest met Fourth Amendment standards, California law created no basis for suppression. (*In re Lance W., supra,* 37 Cal.3d at 886–887, 210 Cal.Rptr. 631, 694 P.2d 744; *People v. Donaldson, supra,* 36 Cal.App.4th at 539, 42 Cal. Rptr.2d 314; *People v. Trapane, supra,* 3 Cal.Rptr.2d 423, 1 Cal.App.4th Supp. at 14.)

**[The portions of this opinion
that follow are deleted
from publication.]**

2. *Motion in Limine to Exclude Confession for Miranda Violations*

When appellant was handed over to detectives for questioning, they did not yet consider him a suspect and therefore did not advise him of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Over the next five and one-half hours, the detectives asked appellant what, if anything, he knew or had "heard on the street" about the robberies and murder. Initially, he denied any involvement or knowledge of the crimes. But, as the evening wore on, the detectives told him one of the perpetrators wore glasses, as did he. They also pressed him about the source of two $100 bills found on him and the ownership of jewelry he was wearing. Appellant became visibly nervous, saying he risked his life if he said anything. The detectives understood him to mean he had witnessed, but not participated in, the crimes. They assured him the police could protect him if he provided any information. He then volunteered he had been a lookout during the robberies and murder.

The detectives stopped their questioning and advised appellant of his *Miranda* rights. They also gave him a form stating those rights that he read aloud and signed. He then confessed to the robberies and murder, providing an 80–minute tape-recorded recounting of the crimes.

At trial, appellant filed a motion in limine to exclude everything he said to the detectives. The court denied the motion. Appellant contends the court erred. We disagree.

A. *Pre–Miranda Statements*

Appellant asserts his statements to the detectives before he was advised of his rights should be barred as being taken in violation of *Miranda.* Under *Miranda,* police must inform a defendant in custody of his right to remain silent and his right to counsel before being interrogated. (*Miranda, supra,* 384 U.S. at 442–445, 86 S.Ct. 1602.) Interrogation is any questioning which police should know is reasonably likely to elicit an incriminating response from the defendant. (*People v. Mayfield,* 14 Cal.4th 668, 758, 60 Cal.Rptr.2d 1, 928 P.2d 485 (1997); *People v. Mickey,* 54 Cal.3d 612, 648, 286 Cal.Rptr. 801, 818 P.2d 84 (1991).) A defendant is in custody when he is deprived of his freedom in any significant way. (*People v. Mickey, supra,* 54 Cal.3d at 648, 286 Cal.Rptr. 801, 818 P.2d 84.)

The detectives testified they did not *Mirandize* appellant at the beginning of the interview because they did not view him as a suspect, and thus their questioning of him was not a custodial interrogation. Consistent with that, he was not in handcuffs during the interview, which took place in the missing persons office with views of the street outside, instead of a

windowless interrogation room. (*Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *People v. Boyer*, 48 Cal.3d 247, 272, 256 Cal.Rptr. 96, 768 P.2d 610 (1989) disapproved on another point in *People v. Stansbury*, 9 Cal.4th 824, 830 n. 1, 38 Cal.Rptr.2d 394, 889 P.2d 588 (1995) [questioning in police station not necessarily custodial interrogation].) Appellant never asked to end the interview, and addressed the detectives, who were not in uniform, by their first names. Most of their conversation was about Buckner and details of the crime that appellant had heard on the street. (*Arizona v. Mauro*, 481 U.S. 520, 528–529, 107 S.Ct. 1931, 95 L.Ed.2d 458 (1987) [not necessarily custodial interrogation merely because there was "possibility" defendant might incriminate himself].) When almost six hours into the interview the detectives began to view appellant as a suspect, they advised him of his rights. The trial court found the detectives were credible, a finding we must accept. (*People v. Whitson*, 17 Cal.4th 229, 248, 70 Cal.Rptr.2d 321, 949 P.2d 18 (1998).) But even assuming the police should have *Mirandized* appellant earlier, their mistake does not require reversal because appellant cites nothing in the record showing that his pre-*Miranda* statements were introduced at trial.

### B. *Post–Miranda Statements*

Appellant contends his post-*Miranda* confession should be excluded because his waiver of his rights was not voluntary, knowing, and intelligent. (*Oregon v. Elstad*, 470 U.S. 298, 314–317, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) [waiver of *Miranda* rights must be voluntary, knowing, and intelligent].) To support his contention, he cites the totality of the circumstances sur-

rounding his confession, particularly the late hour and purportedly undue psychological pressure. (*Fare v. Michael C.*, 442 U.S. 707, 724–725, 727–728, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979) [effectiveness of *Miranda* waiver based on totality of circumstances].) He notes it was near midnight when he confessed. He claims the detectives told him he was the only one of the four perpetrators who had any chance of escaping certain doom because the others were "going to fry." He also claims the detectives promised to tell the district attorney he had been truthful if he confessed and told him he had "a chance to testify at trial,"[3] although he admits they never promised him leniency or a specific legal result. Finally, he claims the detectives threatened to arrest his mother for the gun found in his car unless he explained its origin.

The trial court listened to appellant's tape-recorded confession. It found the confession was "very calm," exhibiting a "non-intimidating situation in a conversational tone." The court noted that unlike many confessions, appellant's consisted largely of his retelling events, instead of the typical pattern of detectives describing the crime and asking for a criminal suspect's one or two word assent to the description. Finally, the court rejected as not credible appellant's claim that the detectives threatened to arrest his mother if he did not confess. The court's finding that appellant's waiver was voluntary, knowing, and intelligent was thus supported by substantial evidence. (*People v. Bradford*, 14 Cal.4th 1005, 1032–1033, 60 Cal.Rptr.2d 225, 929 P.2d 544 (1997).) We therefore see no error.

---

**3.** What appellant understood the detectives to mean by assuring him, as he put it, the "chance to testify at trial" is unclear because such a choice was not for the detectives to make, it being solely the prerogative of appellant and his defense counsel.

### 3. CALJIC No. 17.41.1

The court instructed the jury with CALJIC No. 17.41.1. That instruction states, "The integrity of a trial requires that jurors, at all times during their deliberations, conduct themselves as required by these instructions. Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on penalty or punishment, or any other improper basis, it is the obligation of the other jurors to immediately advise the Court of the situation."[4]

Appellant contends the instruction is unconstitutional because it deprives him of his right to a unanimous jury. He also contends it violates Evidence Code provisions guaranteeing the inviolate privacy of a juror's mental processes by inviting jurors to single out unpopular or holdout voters for removal. Finally, he contends it intrudes on the jury's power (albeit not the right) of jury nullification. Appellant did not, however, object to the instruction, thus waiving his contentions. (*People v. Guiuan*, 18 Cal.4th 558, 570, 76 Cal. Rptr.2d 239, 957 P.2d 928 (1998).)

Even if appellant's contentions are preserved on appeal, they are unavailing because the instruction correctly states the law that the jurors are under a duty to follow the trial court's instructions. (See *People v. Daniels*, 52 Cal.3d 815, 865, 277 Cal.Rptr. 122, 802 P.2d 906 (1991).) The California Supreme Court has recently reaffirmed the trial court's authority to discharge a juror who refuses to follow the court's instruction. (*People v. Williams*, 25 Cal.4th 441, 463, 106 Cal.Rptr.2d 295, 21 P.3d 1209 (2001).) Although the propri-

ety of CALJIC No. 17.41.1 was not directly in issue, the court's decision leaves little doubt that the instruction is proper. The court specifically rejected the argument that the court should not instruct the jury not to nullify the law. "A jury that disregards the law and, instead, reaches a verdict based upon the personal views and beliefs of the jurors violates one of our nation's most basic precepts: that we are 'a government of laws and not men.'" (*Id.* at 459, 106 Cal.Rptr.2d 295, 21 P.3d 1209.) We believe that CALJIC No. 17.41.1 is neutral in its language, and serves the interests of both the prosecution and the defense by preventing improper considerations from influencing the jury. We find no basis for ruling it improper.

In any event, the court's error, if any, in instructing with CALJIC No. 17.41.1 was harmless. (*People v. Molina*, 82 Cal. App.4th 1329, 1335, 98 Cal.Rptr.2d 869 (2000) [CALJIC No. 17.41.1 reviewed for harmless error].) The jurors began deliberating at 2:10 p.m. on the day the case was submitted to them. At 4:00 p.m., they retired for the weekend. They resumed deliberations the following Monday morning at 9:30 a.m., took a 90–minute lunch break, and ended the day at 4:05 p.m. They resumed deliberations at 9:30 a.m. the following morning and at 11:00 a.m. announced they had reached their verdict. During the approximately eight-and-a-half hours the jurors deliberated, nothing in the record indicates there were any holdouts among them, nor were there any complaints by any juror to any court official or any sign of deadlock. In short, nothing in the record suggests CALJIC No. 17.41.1 affected the jury's verdict. (See *id.* at

---

**4.** The propriety of this instruction is currently under review by the California Supreme Court in *People v. Engelman*, 77 Cal.App.4th 1297, 92 Cal.Rptr.2d 416 (2000), review granted April 26, 2000 (S086462), *People v.*

*Taylor*, 80 Cal.App.4th 804, 95 Cal.Rptr.2d 357 (2000), review granted August 23, 2000 (S088909), and *People v. Morgan*, 85 Cal. App.4th 34, 101 Cal.Rptr.2d 829 (2000), review granted March 14, 2001 (S094101).

1335–1336, 98 Cal.Rptr.2d 869 [assuming CALJIC No. 17.41.1 was error, it was harmless where jury deliberated for less than an hour with no evidence of deadlock or holdout jurors and no communication from jury to court].)

### 4. Concurrent Sentences for Robbery of Murder Victim and for Conspiracy

Appellant asserts, and respondent agrees, that the court erred in imposing concurrent sentences for (1) robbing Gary Kim, the murder victim, and (2) conspiracy to commit robbery. Both appellant and respondent agree the court instead should have stayed the sentences. The court erred in imposing a concurrent sentence for robbing Kim because the robbery was the basis of appellant's conviction for first degree murder of Kim under the felony-murder rule. Such dual use of the robbery was improper. (*People v. Boyd*, 222 Cal.App.3d 541, 575–576, 271 Cal.Rptr. 738 (1990) [defendant cannot be sentenced, for both first degree murder and robbery when it is solely the robbery that elevates the murder to the first degree].) The court also erred in imposing a concurrent sentence for conspiracy to commit robbery because he was also sentenced for robbery, and one cannot be punished for both conspiring to commit a crime and for committing the crime. (*In re Cruz*, 64 Cal.2d 178, 180–181, 49 Cal.Rptr. 289, 410 P.2d 825 (1966).)

We shall order that appellant's sentence be corrected.

**[The remainder of this opinion is to be published.]**

### DISPOSITION

The clerk of the superior court is directed to amend the abstract of judgment to reflect that the sentences for count 2 (rob-

bery of Gary Kim) and count 6 (conspiracy to commit robbery) are stayed under Penal Code section 654 and to forward a corrected abstract of judgment to the Department of Corrections. In all other respects, the judgment is affirmed.

CERTIFIED FOR PARTIAL PUBLICATION.

WILLHITE, J.**

GRIGNON, Acting P.J. and ARMSTRONG, J., concur.

### EXHIBIT

### UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

TRYNUN PATTERSON, Petitioner,

v.

ERNEST ROE, Respondent.

**MEMORANDUM AND ORDER DENYING MOTION TO STAY AND ABEY FEDERAL HABEAS CORPUS PETITION**

### SUMMARY OF PROCEEDINGS

On May 9, 2003, petitioner, a prisoner in state custody and **represented by counsel**, filed a federal petition for writ of habeas corpus ("first petition") in case number CV 03–3273. On June 6, 2003, respondent filed a motion to dismiss ("motion to dismiss") that argued the petition should be dismissed because it contained two unexhausted grounds and described the stay and abey procedure. On July 17, 2003, a report and recommendation was filed recommending dismissal without prejudice for failure to exhaust state court remedies that also described the stay and abey procedure. On July 24, 2003, petitioner filed a response that argued the

---

** Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

two grounds were in fact exhausted and requested that the petition be held in abeyance while petitioner presented the two unexhausted grounds in the California Supreme Court. On July 25, 2003, the court denied petitioner's request because it did not have discretion to stay petitioner's mixed petition. The court also advised petitioner regarding the stay and abey prodess and the court warned petitioner that, according to respondent, he had until approximately July 30, 2003 to timely file a fully exhausted federal petition for writ of habeas corpus. On July 29, 2003, judgment was entered dismissing the mixed petition without prejudice.

On July 29, 2003, petitioner, again in state custody and **represented by counsel**, filed a second petition ("second petition") for writ of habeas corpus in case number CV 03–5465. The second petition contained petitioner's three exhausted grounds. Petitioner concurrently filed a motion to hold the second petition in abeyance while he exhausted his other two grounds in the California Supreme Court. Petitioner stated that he was going to file a petition in the California Supreme Court containing the unexhausted grounds on August 5, 2003.

### BACKGROUND

On June 27, 2000, a jury convicted petitioner of two counts of robbery, conspiracy, and first degree murder in violation of California law. (Mot. to Dismiss, Ex. A).

On November 30, 2000, petitioner filed an appeal in the California Court of Appeal raising the following grounds:

1. The trial court erred in denying petitioner's motion to suppress evidence on the grounds that petitioner's arrest was unlawful;

2. The trial court erred in denying petitioner's in limine motion to exclude his extrajudicial statements on the grounds that *Miranda*[1] warnings were required at their inception, the statement was involuntary and the post-*Miranda* statement was otherwise coerced and involuntary;

3. The trial court erred in instructing the jurors pursuant to CALJIC No. 17.41.1 that they were obligated to report to the trial court any "improper" thoughts expressed by any juror during deliberations; and,

4. The Sentences on Counts 2 and 6 must be stayed pursuant to California Penal Code § 654.

(Mot. to Dismiss, Ex. B at 27–28). On September 25, 2001, the court of appeal affirmed the judgment and corrected petitioner's sentence in a partially published opinion. (Mot. to Dismiss, Ex. C).

On October 29, 2001, petitioner filed a petition for review in the California Supreme Court raising the following grounds:

1. Petitioner was arrested illegally and his subsequent confession should be suppressed; and,

2. the jurors were unconstitutionally instructed with CALJIC No. 17.41.1.

(Mot. to Dismiss, Ex. D at 105). On December 19, 2001, the California Supreme Court granted the petition for review and noted that "[f]urther action on the matter is deferred pending consideration and disposition of a related issue in *People v. McKay* . . . . " (Mot. to Dismiss, Ex. E). After the California Supreme Court's decision in *People v. McKay,* 27 Cal.4th 601, 117 Cal.Rptr.2d 236, 41 P.3d 59 (2002), on May 1, 2002, the California Supreme Court issued another order regarding petitioner's petition for review that dismissed the peti-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

tion and remanded the "cause" to the court of appeal. (Mot. to Dismiss, Ex. F). On May 8, 2002, the court of appeal closed the case and issued the remittitur. (Respondent's Response to Court's June 10, 2003 Order, Ex. A).

Petitioner did not seek collateral review in the California courts.

The first and second federal petitions followed.

## CONTENTIONS

In his first federal petition, petitioner raised the following grounds:

1. Trial counsel was constitutionally ineffective for failing to argue that petitioner's statements were the product of improper police coercion;

2. Petitioner's arrest was unlawful;

3. Evidence that was the product of the unlawful arrest was introduced at trial and used to convict petitioner;

4. Petitioner's statements should have been suppressed because he was not advised of his constitutional rights prior to questioning and were therefore obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and,

5. The trial court violated petitioner's federal constitutional rights when it instructed the jury pursuant to CALJIC No. 17.41.1.

(First Fed. Pet. at 5–6). Respondent contended that grounds one and four were unexhausted, and the court concurred. In his second petition, petitioner raises grounds two, three, and five. Petitioner has requested that the court hold his second petition in abeyance while he exhausts grounds one and four in the California Supreme Court.

## DISCUSSION

### Request to Hold in Abeyance

The Ninth Circuit has held that a district court *may*, in its discretion, allow a habeas corpus petitioner to amend a habeas corpus petition by deleting unexhausted claims, and then hold the amended petition in abeyance subject to future amendment reincorporating the deleted claims after they are exhausted in state court ("withdrawal-and-abeyance procedure"). *See Calderon v. U.S. Dist. Court for the Northern Dist. of California (Taylor)*, 134 F.3d 981, 988 (9th Cir.1998). The United States Supreme Court has held that "[n]othing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation...." *Sanders v. United States*, 373 U.S. 1, 18, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

In the context of *pro se* petitioners, the Ninth Circuit has stated that the exercise of discretion to stay the petition "is particularly appropriate when an outright dismissal will render it unlikely or impossible for the petitioner to return to federal court within the one-year limitation period imposed by the Antiterrorism and Effective Death Penalty Act (AEDPA)." *Kelly v. Small*, 315 F.3d 1063, 1070 (9th Cir.2003). However, recent cases such as *Kelly, James v. Pliler*, 269 F.3d 1124 (9th Cir. 2001), *Ford v. Hubbard*, 330 F.3d 1086, 1098 (9th Cir.2003), and *Brambles v. Duncan*, 330 F.3d 1197, 1203–04 (9th Cir.2003) have all emphasized that **this discretion is appropriately exercised in the context of protecting the rights of *pro se* litigants.**

*See Ford v. Hubbard,* 330 F.3d at 1098 (stating that district judge is obligated to inform *pro se* litigant of his options with respect to his mixed petition because *pro se* litigants are entitled to additional procedural protections); *see James v. Pliler,* 269 F.3d at 1126–27 (emphasizing a *pro se* litigant "is entitled to certain procedural protections"); *see Brambles v. Duncan,* 330 F.3d at 1203–04 (observing that exercise of discretion to stay federal proceeding is particularly appropriate when an outright dismissal will render it unlikely or impossible for the *pro se* petitioner to return to federal court within the one-year limitation period imposed by AEDPA); *see also Garaux v. Pulley,* 739 F.2d 437, 439–40 (9th Cir.1984) (the rights of *pro se* "litigants require careful protection where highly technical requirements are involved, especially when enforcing those requirements might result in the loss of the opportunity to prosecute or defend a lawsuit on the merits"); *see also Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir.1992) (finding that with respect to *pro se* pleadings, before dismissing a *pro se* complaint, "the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively").

Based on the circumstances in which the Ninth Circuit has found it appropriate for a district court to exercise its discretion to stay a petition, a stay is not warranted in this factual context. Petitioner is represented by counsel and is not proceeding *pro se.* Petitioner has not diligently attempted to exhaust his state court remedies because he never sought collateral review until shortly before or after the statute of limitations expired. Respondent

advised petitioner on June 6, 2003—approximately two months before petitioner became time-barred—that two grounds were unexhausted and regarding the stay and abeyance procedure with respect to the mixed petition. Accordingly, it was petitioner's counseled decision to continue to pursue his mixed petition notwithstanding the statute of limitations and decline to file a fully exhausted petition and seek to stay and abey the petition in case number CV 03-5465. Moreover, petitioner raised his *Miranda* ground—which is the basis for the unexhausted grounds he is currently seeking to exhaust in his state petition—in his appeal filed in the California Court of Appeal but not on petition for review in the California Supreme Court. Under these circumstance, holding the petition in abeyance would circumvent the one-year period of limitation prescribed by 28 U.S.C. § 2244(d). *See generally Duncan v. Henry,* 513 U.S. 364, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). Accordingly, petitioner's request that this court hold the petition in abeyance should be **DENIED.** Petitioner is reminded that the traverse is due on or before **September 9, 2003.**

CAROLYN TURCHIN

UNITED STATES MAGISTRATE JUDGE.